## Betton, Adm'r, *vs.* Cutts, Adm'r.

Where there is an admission of the existence of a debt, otherwise barred by the statute of limitations, connected with a conditional promise of payment, no action can be sustained upon the demand, if the defendant sets up the statute as a bar, unless it is shown that the contingency has happened.

Where the defendant admitted the justice of the demand, and said he would pay if he ever received any thing on a certain claim, and his administrator after his decease received a dividend upon the claim—*Held*, that this was sufficient to take the case out of the statute.

Where the original promise is absolute, and the new promise is conditional, it is not necessary to declare specially upon the latter. It is sufficient to declare upon the original demand. The matter which takes the case out of the statute may be given in evidence, in answer to the defence.

A new promise, therefore, made after the decease of the creditor, and while there is no administrator upon his estate, may be given in evidence upon a declaration founded on the original demand, without any averment of the new promise, even if it is conditional.

Assumpsit. The case came to the common pleas upon

Betton *v.* Cutts.

an appeal from the decision of the commissioners on the estate of Edmund Roberts, the defendant's intestate. The declaration contained several counts, alleging, 1. That January 1, 1809, Roberts, being indebted to Caleb Hopkins, upon whose estate the plaintiff is administrator *de bonis non*, in the sum of $860, upon an account annexed to the writ, in consideration thereof promised Hopkins to pay him that sum.

2. That Roberts, being indebted to Hopkins, as stated in the first count, in consideration thereof on the 25th December, 1832, promised Margaret Hopkins, who was administratrix on his estate, to pay said sum provided said Roberts ever got any thing on a certain claim, from the French government, with an averment that Roberts, on the 1st of January, 1836, received on his said claim $4000, and thereby became liable, &c.

3. That Roberts, being indebted to Hopkins as aforesaid, in consideration thereof, on the 25th April, 1834, promised the plaintiff, Betton, as administrator *de bonis non*, to pay him said sum if he ever received any thing on his claim against the French government, with an averment that he received $4000, January 4, 1836.

4. That Roberts was indebted, and promised as alleged in the last count, with an averment that the defendant, Cutts, as administrator, received on said claim against the French government the sum of, &c.

The defendant pleaded the general issue, and filed a brief statement, setting forth that Roberts did not promise within six years, and that the cause of action did not accrue within six years next before his decease, and that no action accrued to the plaintiff within six years next before the commencement of this action.

On the trial it appeared that Hopkins died January 11, 1816. His widow, Margaret Hopkins, took administration on his estate in February following, and died December 26, 1832. The plaintiff was appointed administrator *de bonis non*, March 22, 1837.

After the appointment of said Margaret as administratrix, Robert Neal, of Portsmouth, acted as her agent; and finding the account on the books of Hopkins, (a considerable portion of which account is for services and disbursements on a voyage to Cherbourg, in a vessel which was seized and condemned by the French government,) said Neal, in the spring of 1817, shewed the account to Roberts, who said it was right, and if he ever got any thing from the French government he would pay it. In 1820 he again talked with Roberts on the subject, and enquired if there was any prospect of his recovering pay from the French government, to which Roberts replied, he thought there was, but he could not tell when; and said if he received his claim he would pay this account.

In the latter part of the summer, or in the fall, of 1833, Neal, at the request of the plaintiff, who had married a daughter of Hopkins, called on Roberts, and repeated the enquiry, and Roberts again said he thought there was a prospect of receiving his pay, and if ever he received any thing he would pay this bill—that the account was just and ought to be paid.

There was awarded to Roberts between $7000 and $8000 on his claim, and the sum received from the French government on account of claims of that description was sufficient to pay about fifty-three per cent.

Roberts died in 1836, in Java, having himself received nothing on his claim.

The United States retained about $2000, to pay a custom house bond of Roberts, made in 1820, and the balance has been received by the defendant, Cutts, as his administrator; $452·22 having been received before the filing of this appeal, and the residue since.

The plaintiff's claim was presented September 17, 1838.

A verdict was taken for the plaintiff by consent, judgment to be rendered thereon; or the verdict to be amended, or set aside, and judgment rendered for the defendant; according to the opinion of this court upon the foregoing case.

*Cutts & Bartlett,* for the defendant. The construction of what Roberts said is, fairly, that if he ever got any thing from the French government for the claim made by him, he would pay. He never got any thing, in his lifetime, on any claim.

The claim is barred by the statute of limitations, and there is not sufficient to take the case out of the statute, and sustain the suit.

The promise in 1820 was on condition. To fulfil this condition, Roberts must have received the whole amount of his claim.

In 1833 it is put on the ground that if he received any thing, he would pay this demand. But this was not a promise made to any body, or when there was any body in existence to whom a promise could be made. The plaintiff had not then taken administration.

The court has never departed from the principle that there must be a party to whom the promise may be made. 6 *N. H. Rep.* 135, *Exeter Bank* vs. *Sullivan.*

The new promise is not a continuance of the old indebtedness, but a new contract. 1 *Barn. & Cres.* 248, *Pittam* vs. *Foster;* 2 *Ld. Raym.* 1101, *Green* vs. *Crane;* 1 *Barn. & Ald.* 93, *Hurst* vs. *Parker;* 6 *Taunt.* 210, *Ward* vs. *Hunter;* 3 *East* 408, *Sarell* vs. *Wine;* 5 *Binn.* 573, *Jones* vs. *Moore;* 3 *Wend.* 187, *Purdy* vs. *Austin.*

There must be a new cause of action. There must be a new promise; and if so, there must be parties to it.

All the promises were on condition that he recovered the claim on the French government; and he never recovered any thing.

*Bell & Betton,* for the plaintiff, cited, and commented on 1 *Pick.* 368, *Robbins* vs. *Otis;* 8 *Johns. R.* 318, *Bush* vs. *Barnard;* 6 *N. H. Rep.* 425, *Stanton* vs. *Stanton;* 7 *Bing.* 163, *Haydon* vs. *Williams;* 1 *Camp.* 366, *n.;* 2 *Pick.* 374, *Bangs* vs. *Hall;* 3 *Camp.* 32, *Halliday* vs. *Ward;* 3 *B. &*

---

Betton v. Cutts.

---

*Ald.* 141, *Mountstephen* vs. *Brooke ; 4 Pick.* 110, *Whitney* vs. *Bigelow ;* 2 *Stark. Ev.* 470, 482 ; 3 *N. H. Rep.* 467, *Buswell* vs. *Roby ;* 16 *East* 420, *Leaper* vs. *Tatton ;* 2 *Burr.* 1099, *Yea* vs. *Fouraker ;* 6 *N. H. Rep.* 432, *Merriam* vs. *Wilkins ;* 2 *Stark. Ev.* 479 ; 1 *B. & Ald.* 93, *Hurst* vs. *Parker ;* 1 *Ld. Raym.* 421, *Heyling* vs. *Hastings ;* 1 *Peters* 343, *Bell* vs. *Morrison ;* 1 *B. & Ald.* 690, *Gibbons* vs. *M'Casland ;* 6 *Taunt.* 210.

PARKER, C. J.   The plaintiff relies upon three several promises of Roberts, the defendant's intestate, to take this claim out of the operation of the statute of limitations. Two of them were made while Margaret Hopkins was administratrix upon the estate of the plaintiff's intestate, and all of them were upon the condition that something should be received from the French government, upon a claim he had against that government on account of the seizure of a vessel.

Upon each of these occasions there was a distinct acknowledgment of the existence of a debt, and an express promise of payment upon the happening of a certain event ; and if Hopkins himself had then been alive there could have been no question that here was sufficient to take the case out of the statute, and sustain an action, upon the happening of the contingency.

It is objected, that the contingency upon which payment was to be made has never happened, and that the action cannot be maintained, for that reason ; and if the objection is founded in fact, it is sufficient to defeat the action.   Where there is an admission of a debt otherwise barred by the statute, with a conditional promise of payment, no action can be sustained upon the demand, if the defendant relies upon the statute as a bar, unless it is shown that the contingency has happened.   4 *N. H. Rep.* 316, *Atwood* vs. *Coburn, and cases cited.*

But we are of opinion that the construction which the de-

fendant's counsel attempt to place upon the language, is too narrow. It is true the terms used, according to the testimony, must have been, "I think there is a prospect of receiving my pay, and if I ever receive any thing," or, "if I receive my claim I will pay this bill." And it is also true that Roberts died without having himself received any thing. Under a strict literal construction of the language used, the contingency has not happened. But if Roberts had received the amount of his claim, and then died without paying this demand, no one would contend that an action could not be sustained against his administrator, on the ground that by the terms of the promise Roberts himself only was to pay, and that the promise had become ineffectual from the impossibility of its performance by him. And we think there is as little reason for supposing that he intended an actual receipt of the claim by himself, as of the essence of the condition and promise. Had it been received by his agent, in his lifetime, it would have been a receipt by him, within the meaning of the promise, although the money never came into his personal custody. And so when the money was paid to his administrator after his decease. The language used in two instances was equivalent to saying, if any thing is received on that claim this demand shall be paid.

It has been further objected, that the action cannot be sustained because the full amount of the claim on the French government has not been received, but only a dividend upon it. Had the matter rested upon the evidence of what was said in 1820, this objection might perhaps have been valid. Roberts had the power to make the payment depend upon such contingency as he pleased. We have only to ascertain his meaning. In 1820, according to the evidence, he said if he received his claim he would pay this account. If this had been the language upon the other occasions also, there would have been much force in the argument that he had made the receipt of the whole claim a condition precedent to the payment—that there was no rule of construction by

Betton *v.* Cutts.

which to enlarge the signification of the terms used by him. But the case does not depend upon what was said at that time. In 1833 the declaration is, that he would pay if he received any thing on his claim. The same language was used in 1817. There is not only the language itself, on these occasions, which standing alone imports a promise to pay on the receipt of any part, but there is a reason why this language should not be restricted from its ordinary signification. The justice of the debt being acknowledged, the intention to pay probably related to his ability so to do. This is fairly to be inferred from the fact that the payment is made to depend upon the receipt of money upon a claim connected with this demand. The demand was originally less than $1000. And when he acknowledged its justice, and said he would pay it if he received any thing on his claim, he could hardly have intended to make the receipt of the whole sum awarded on the claim (over $7000) a condition precedent to the payment of this demand. It is a fair inference that he understood that if he received any thing on his claim, it would be more than sufficient for the payment of this debt, and that he therefore intended, as he said, that he would pay what he thus owed, if he received any thing. And it might admit of doubt whether, by the declaration in 1820, he did not intend a similar promise.

It is further objected, that there was no person in existence to whom a valid promise could be made in 1833, there being then no personal representative of the intestate, nor any one who could maintain a suit; and that the administrator *de bonis non* since appointed cannot for this reason maintain an action; and if this objection might avail, a question would arise whether there is such a privity between the present plaintiff and the administratrix, Margaret Hopkins, as that the plaintiff can maintain an action on the conditional promises made in 1817 and 1820, during her administration; if there is no objection to them on account of the lapse of time since they were made. There is, in some of the English

Betton *v.* Cutts.

cases which have been cited for the defendant, a technical mode of reasoning, founded upon the position that a new promise, express or implied, is necessary to sustain the action, which would go to the support of this objection. Thus, where the declaration was by an executor, on promises to his testator, and upon *non assumpsit infra sex annos,* and issue, there was evidence of an acknowledgment and promise to the executor, more than six years after the original cause of action accrued, and within six years prior to the commencement of the suit; the court were of opinion that the action could not be maintained, the promise being made to the executor, and so out of the issue. 2 *Ld. Raym.* 1101, *Green* vs. *Crane.* And the authority was followed, 3 *East* 409, *Sarell* vs. *Wine;* and 6 *Taunt.* 210, *Ward* vs. *Hunter.* In this last case it is said : " When the courts determine that an acknowledgment is evidence of a new promise, it must be of a promise made by a person competent to make it, and to a person who is in existence to receive it."

Upon this reasoning, the action in such cases must be brought upon the new promise. And a similar process of reasoning, if extended farther, would lead to the conclusion that, in order to avail himself of a conditional new promise, a party must declare upon it, averring that the contingency upon which it was to be operative had occurred. The reporter's abstract in *Haydon* vs. *Williams,* 7 *Bing.* 163, is to that effect, and some of the reasoning of the court certainly points to such a conclusion. But that was not the decision, for Mr. Ch. Jus. Tindal explicitly says, " Without, therefore, determining whether such promise ought or ought not to be specially declared upon, it is sufficient to say, that in this case there was no proof of the defendant's ability to pay at the time of the action brought, so as to satisfy the condition and make the promise absolute and unqualified, like those in the declaration." A similar decision was made in *Tanner* vs. *Smart,* 6 *Barn. & Cres.* 603. But Lord Tenterden, in that case, evidently considered that it was sufficient to de-

clare upon the original absolute contract, and upon the usual issue, on the plea of the statute of limitations, to prove a conditional new promise, if proof was also offered of the happening of the contingency upon which it depended. That was regarded as raising the qualified promise into an absolute one. This last case, therefore, is a very direct authority to show that it is not necessary, where the original promise is absolute, and the new one qualified, to declare specially upon the latter. It is sufficient to declare upon the original demand. The matter which takes the case out of the statute may be given in evidence in answer to the defence. It is settled here that evidence of a new promise, made to an administrator, will support an action on a promise to the intestate. 3 *N. H. Rep.* 467, *Buswell, Adm'r*, vs. *Roby ;* 8 *Mass. R.* 134. We have no doubt that this is the better doctrine. If the new promise must be the foundation of the action in one case, it should be in all. If the action should be on the promise made to the administrator, because evidence of a new promise to him would not support a count upon a promise to the intestate, it might as well be said that evidence of a conditional promise would not support a declaration upon an absolute promise, even if the condition was performed. Such would be the principle in the case of an original special promise. And so it might be said, farther, that evidence of a verbal promise to pay a promissory note, was not of itself a promissory note, and did not, therefore, support a declaration founded upon one. Such a mode of reasoning, however, is not believed to prevail any where. The course in England, except in actions by executors or administrators, is to declare upon the original cause of action. 16 *East* 420, *Leaper* vs. *Tatton.*

It is stated in the marginal abstract of *Jones* vs. *Moore*, 5 *Binney* 573, that " An acknowledgment does not revive the old debt, but is evidence of a new promise, for which the old debt is a consideration." This, however, is not sustained by the opinions delivered. If it were so, it would be

very clear that the action must be brought upon the new promise in all cases. To declare upon the consideration, instead of the contract, would be absurd.

Furthermore: If the action was brought upon the new promise, there would be nothing to be taken out of the statute, for the new promise is never within it. And this shows also that the action should be founded upon the original contract, and that although there must be a new promise, or an acknowledgment from which a promise may fairly be inferred, the reason of this is, not that the action is founded upon the new promise, as its substantive cause, but because nothing short of evidence of a debt due, and of an intention to pay it, is sufficient to take the original demand out of the statute, and remove the bar, which would otherwise defeat the action. This continues or restores the vitality of the original demand.

Upon these views there is no difficulty in sustaining this action upon the first count in the declaration. It was not necessary that there should have been any personal representative of Hopkins in existence in 1833, to receive the acknowledgment or promise then made, for the action is not founded upon that. It is only used as evidence of the existence of a prior debt, which the party was willing to pay upon the happening of a certain contingency; and the fact that the contingency has happened, so that the bar is entirely removed, might well be given in evidence to support the issue, had the defendant pleaded the statute specially; because, upon the construction given to the statute in actions of assumpsit, the substance of a plea founded upon it, (whether it take the shape of an allegation that the defendant did not promise within six years, or that the cause of action did not accrue within that time,) is, in fact, that no cause of action has existed within six years prior to the commencement of the suit. And any evidence which shows the existence, within that period, of a legal claim, or debt, such as is described in the declaration, and which is admit-

ted to be still a binding obligation upon the party, maintains the issue. If the admission of its binding force is made to depend upon a contingency, it is only necessary to show in evidence that it has happened, and the cause of action is thus shown to exist, and the issue is supported. Any other principle than this, if carried out, must result, as we have seen, in requiring the action to be brought in all cases upon a new promise; when in fact the new promise is in no case the cause of action, but evidence which takes the cause of action out of the operation of the statute.

It may be added, that in this case there is no technical issue except the general issue, the defendant having filed a brief statement that he should rely upon the statute of limitations instead of pleading it; and there would, therefore, be no such technical difficulty as was the foundation of the English decisions which have been cited, even if they were regarded as furnishing a sound rule where new promises are made to the representatives of persons deceased.

*Judgment on the verdict.*