CHANCERY.

**Hardin and Wife _vs_ T. Smith's Ex'or., Appeal; T. Smith's Ex'r. _vs_ G. Smith's Adm'r., Writ of Error; G. Smith's Adm'r. _vs_ T. Smith's Ex'r., on Cross Errors,**

_Case_ 105.

To THE WASHINGTON CIRCUIT COURT.

_Husband and wife. Surcharging settlements. Chancery jurisdiction._

_June_ 28.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

The case stated, and grounds of equity set out in the original Bill of Geo. Smith's adm'r.

IN 1823, George Smith being then posseesed of a tract of land of 100 acres, sixteen slaves, old and young, and some personal property, was found to be a lunatic by a jury in the Mercer Circuit Court. Turner Smith was appointed his committee, and continued in that office for about eighteen years, when the committee having died, and George Smith, the lunatic, having also shortly afterwards died, Willis, his administrator, filed this bill against the executrix of Turner Smith, and others, alledging the omission of various items of charge in his accounts, and fraud and mismanagement of the estate of the lunatic, while under the management of Turner Smith as his committee; and the executrix having intermarried with McKitrick, the suit progressed against McKitrick and wife. The bill, among other things, seeks to charge the estate of Turner Smith with the amount of two notes of $200 each, executed by B. I. Head in 1819, and held by Turner Smith, as committee, on the ground that although he might have collected them, he failed to do so, and in consequence of his negligence, they had become worthless.

Answer of McKitrick and wife made a cross bill _vs_ Mordecai Hardin and wife.

Besides resisting this claim altogether, McKitrick and wife make their answer a cross bill, and bring Mordecai Hardin and Jane his wife, before the Court as parties, the latter being a sister, and one of the heirs of George Smith; and they pray that if the estate of T. Smith should be made liable for these notes on Head, they may

have a decree over for the amount against M. Hardin and wife, on the following grounds: They alledge, and it ap-· pears that Jane Smith was first the wife of B. .I Head, the maker of the notes in question, and upon his death became his administratrix; that she afterwards married Henry Hardin, and being again a widow, married one Bently, and after his death married Mordicai Hardin, her present husband; that during her marriage with Henry Hardin, she and Hardin executed a covenant or agree- ment with Turner Smith, to the effect that if he would not collect these notes from the estate of Head, the amount should be settled as a part of Jane Hardin's in- terest in her brother George's estate, expectant upon his death. The enforcement of this agreement is resisted by M. Hardin and wife, on the ground: 1st, that when it was made, George Smith being alive, his sister, as heir expectant, had no interest in his estate which could be disposed of. 2d, That she being a married woman, was not bound by the agreement; and 3d, That she was not, in equity, the debtor.

HARDIN & WIFE, et al. vs T. SMITH'S EX'R, &c.

The Court having rendered a decree against T. Smith's executors for a considerable sum, also decreed that M. Hardin and wife should account to them for the amount of said notes and interest, and should have the benefit of the notes. From this decree M. Hardin and wife have appealed, and McKitrick and wife, executors of T. Smith, having prosecuted a writ of error to reverse the decree against them, Willis, the administrator of George Smith, assigns cross errors in this last decree. The cases being all before us on the same record, we shall first notice the decree against Hardin and wife, the propriety of which is questioned by the assignment of errors, not only on the grounds taken in their answer, but also on others of a more formal character.

The decree does not direct Hardin and wife to pay the amount of the two notes, but merely to account for it to or with the executors of T. Smith. No provision is made for any settlement, in which this accounting is to take place, nor does it appear in what manner the executors of T. Smith are to have any benefit from this part of the decree, whether by a new bill in equity, or by action of

Decree of the Circuit Court against Hardin and wife.

HARDIN & WIFE,
et al.
vs
T. SMITH'S EX'R.
&C.

assumpsit for the value or amount of the notes. But it was obviously intended to secure some benefit to these parties, and to impose some burthen upon the others; and if the latter are not equitably liable to any burthen in the premises, the decree, however uncertain and imperfect, must be deemed prejudicial to them and subject to reversal on their appeal.

The husband and wife cannot make any contract during coverture to dispose of the wife's expectancies as heir to her relations, which will bind the wife after his death.

The claim against Hardin and wife, founded solely on the agreement set up in the cross bill, and not upon any alledged mal-administration of the estate of B. J. Head by his administratrix, nor upon any suggested benefit arising either to her or to her present husband from the forbearance to urge the coercion of the debt against Head's estate. This being the case, the defence relied on by the answer, which is sworn to by Mrs. Hardin, as well as her husband, that she was, when she signed the agreement, a *feme covert*, incapable of binding herself, and that the agreement, therefore, is of no force against her, must be regarded as a complete bar to the relief sought against her and her present husband upon the covenant referred to. There may, indeed, have been a sufficient consideration to make that agreement binding upon such parties to it as were competent to contract. If it was to be and was the inducement for T. Smith's forbearance, this was a consideration, and the representatives of Henry Hardin may be responsible for a breach of his contract. But Mrs. Hardin being incompetent to contract, was not bound by it, and of course it imposes no obligation on her present husband, who can only be responsible by reason of his wife's being so.

Conceding then, that although at the date of this covenant, Mrs. Hardin had no interest in her brother's estate which could be transferred or assigned, a personal contract might have been made, and a personal obligation incurred in relation to the disposition of her expected interest when it should accrue, it is still clear that she being then a *feme covert*, was not bound by the covenant or contract which was then made.

We may observe further, that as the cross bill does not seek for a settlement of the estate of George Smith, in which the interest of Mrs. Hardin might be ascertained

and distributed, but seeks to enforce this covenant as a mere indemnity, there is no such connection between the case against Hardin and wife and that upon the original bill, as would authorize the former to be brought into the same case by cross bill, even if Mrs. Hardin had been bound by the covenant; or at any rate no relief could have been granted on the cross bill, unless its form had been so altered as to make it in effect a bill for a settlement and distribution of George Smith's estate, in which the executors of T. Smith might be the claimants of Mrs. Hardin's share, to the extent of the amount of these notes on Head. The vagueness of the decree in granting relief, was the consequence of the defectiveness of the cross bill and illustrates its insufficiency.

It is contended that Turner Smith postponed the collection of the notes on Head in consequence of the agreement of Hardin and wife, undertaking that they should be paid by Mrs. Hardin's interest in her brother George's estate, or received in discharge of that interest, and that it would be inequitable to allow her that interest as against Turner Smith's estate, without requiring her compliance. But Mrs. Hardin does not occupy the attitude of a complainant seeking relief; and if she did, it might be proper to consider other facts, or to make other inquiries besides those now brought into view, before we could determine that there was any such equity against her personally, as should preclude her claim. The claim, however, being against her as a defendant, and being founded on her alledged covenant without a disclosure of the circumstances, her plea of coverture is a sufficient answer, and the cross bill against her and her husband should have been dismissed without prejudice.

Wherefore, the decree upon the cross bill against Hardin and wife, is reversed on their appeal, and the case is remanded with directions to dismiss the cross bill as against them.

*McKitrick and wife, executors, vs Willis, administrator.*

Upon the writ of error of McKitrick and wife, executors of T. Smith, against the administrator of George Smith, the principal question relates to the character and

<span style="float:right">Case as between these parties.</span>

HARDIN & WIFE,
et al.
vs
T. SMITH'S EX'R.
&C.

effect of certain orders of the Mercer Circuit Court upon settlements made under its authority, with Turner Smith, as the committee of George Smith. Other questions presented by the original and cross errors, relate to the admission or rejection, or proper amount of various items of debit and credit in making up the account of G. Smith's estate in the hands of the committee, T. Smith, and of his executors since his death.

It appears that in 1828, 1829 and 1830, settlements were reported to the Mercer Circuit Court, by one or more Commissioners acting under its appointment, each exhibiting a balance in favor of the committee. The last one stated the aggregate balance at about $1,224, and recommended that the committee be allowed to appropriate a part of the estate for its discharge. These reports were in general terms confirmed, subject to the future investigation of those who might be interested in the estate; and with the same qualification, it was ordered that Turner Smith, the committee, might retain so much of the profits of the estate and of the estate, as would satisfy the reported balance in his favor. Under this order he afterwards reported that he had appropriated four slaves, according to the valuation of individuals who seem to have been selected by himself. Upon this report no final or direct action seems ever to have been taken by the Court. But the committee, Turner Smith, treated these four slaves as his own afterwards, not noticing them as a part of the estate of George Smith in his subsequent annual reports, which seem to have been impliedly confirmed. One of the four slaves thus appropriated by T. Smith, was sold by him within a few years afterwards; and on the same day on which this bill was filed, the complainant, as administrator of G. Smith, commenced in the same Court, an action of detinue for the other three. That action was resisted on the ground that by the decrees of the Mercer Circuit Court and the proceedings under them, these slaves had become the property of T. Smith. But the judgment first rendered for the defendants was reversed by this Court, which decided that there was no final decree vesting the property in T. Smith, and a judgment was afterwards rendered for the

plaintiff for the three slaves, and for $431, their hire from the commencement of the suit. The three slaves having been delivered, the cross bill of McKitrick and wife prays, among other things, to enjoin this judgment for the hire; and it is now contended that the Circuit Court erred, not only in dissolving this injunction, but in not confirming the appropriation of the slaves made by Turner Smith and all the settlements and reports made in the Mercer Circuit Court.

The decision of this Court in the detinue case, is conclusive between the parties as to the construction and effect of the decrees and proceedings in the Mercer Circuit Court, so far as they affect the legal title to the slaves. It did not, however, conclude nor even touch the question whether the appropriation of the slaves which, though countenanced by that Court and made under its authority, never received its positive sanction, should not be confirmed by a Court of equity. Without undertaking to define the circumstances which might render such a confirmation proper, it is evident that one essential circumstance must be the existence, either then or at least afterwards, of a just balance in favor of the committee, equal to or approximating the value of the four slaves, and which could not well be extinguished in any reasonable time without the appropriation of these or other slaves to its discharge. This proposition involves an inquiry first into the justice of the claim or balance of $1,224 reported in 1830, and then into the condition and circumstances of the estate of the lunatic in the hands of his committee.

The great lapse of time covered by the accounts between Turner and George Smith, commencing four or five years before the inquest of lunacy was returned, as well as the weight justly due to settlements reported by Commissioners of the Mercer Circuit Court, and which have remained so long without objection, require that those settlements should be regarded as *prima facie* evidence of their own correctness, subject only to be impeached by surcharge or falsification, as in other cases of *exparte* settlements made under the sanction of a Court. Under the application of this principle, we should not

HARDIN & WIFE
*et al.*
*vs*
T. SMITH'S EX'R.
&C.

After a great lapse of time settlements made and reported by fiduciaries, that have received sanction of a judicial tribunal, will *prima facie* be deemed correct.

feel authorized, upon the evidence in this case, to reject from the settlements and reports remaining in that Court, any item the propriety of which depends upon extraneous proof or matter of fact. But there is a palpable mistake of $100 in the addition, the correction of which would reduce the reported balance to $1,124, in which is included about $119 of interest on previous balances, the reduction of which balances would also reduce this item of interest. And the accounts must be subject to the correction of obvious mistakes, and to the addition of omitted items, in any appropriate proceeding, when it is material to ascertain the true amount of the estate of G. Smith remaining to be distributed, or to ascertain the justice of the balance shown by the settlements.

[Here the Court enter into a calculation of the state of the account prior to 1830, resulting in the conclusion, that no such balance as was charged by the committee was due to him. The Court proceed:]

Having thus disposed of the case so far as the accounts prior to the settlement of 1830 are concerned, by considering the committee as chargeable with the value of the personalty and the amount due on B. I. Head's notes, which became his, the proper demand of the administrator of G. Smith is to be ascertained from the accounts subsequently arising. In this part of the case the annual reports of the committee, stating his claim for services and disbursements up to April in each year, including 1841, in which he died, and charging himself with hire received or due for each year, up to the first of January, except for the four slaves which he had appropriated, should be assumed as the basis for making up the account, which should be done by striking a balance on the account of each year, as rendered by him, charging interest on the balances against him, crediting each balance in his favor at its date, first upon the interest and then upon the principal, and bringing down the interest without compounding it, to the date of the final settlement or the decree, when the principal and interest should be added together, as forming one principal element of the decree.

Charlotte, one of the four slaves appropriated by the committee to himself in 1830, having been sold him by

in 1833, the committee should be charged with her hire as estimated in the Commissioner's report in this case, for the years 1830, 1831 and 1832, without interest, and also with the sum for which she was sold, say $350, with interest thereon from the first day of January, 1833, to the final settlement or decree. He should also be charged with the hire of the three boys, Ben, Jack and Stephen, as estimated by the Master Commissioner, from the first of January, 1830, up to the commencement of the action of detinue in which they were recovered, but without including interest; and the aggregate of these several charges will form a second principal element of the decree, to which should be added the hire of the boy West, for the year 1839, and of the boy Albert or Alfred, for the year 1841, as charged in the decree now before us.

As an ejectment has been brought by the heirs of George Smith, to recover the land which had belonged to him, in which the validity of the purchase by Turner Smith, his committee, will be or has been appropriately tried, the question of rents subsequent to the purchase, or to the first day of January, 1829, being involved in the issue of that suit, are not to be considered in making up the decree in this case, unless by consent of parties or by the determination of the ejectment suit, they should become proper subjects of account between the present parties. If the title did not pass by the sale, the administrator will be entitled to the annual value of the rents during the life of George Smith, which should go first to extinguish the interest and principal of the debt paid by the sale, and the aggregate of the remaining rents, without including interest, should form an element of the decree in favor of the administrator of George Smith. Should the ejectment not be determined, the bill as to the rents now referred to, may be dismissed without prejudice.

The sums which, upon the foregoing principles may be found chargeable against the estate of Turner Smith should be credited by the principal and interest of the notes of the Randell's, given for hire, but which have proved unavailable without the fault of the committee, and also by the amount of the judgments against the

HARDIN & WIFE
et al.
vs
T. SMITH'S EX'R.
&C.

complainant, which he prays to be set off. In regard to these last particulars, the decree as rendered is proper; but we are of opinion that the charge of $100 for trouble and expenses incurred by McKitrick and wife in recovering the slave, Jackson, who had run away while the action of detinue, in which he and the two others were recovered, was pending, should not have been allowed. The slaves of G. Smith, except the four which had been appropriated by the committee, seem to have been delivered up to the administrator of G. Smith, and their hire alone is involved in this suit.

The heir or administrator of the committee of a lunatic may be sued in any circuit in which he may be found by the adm'r. of the lunatic or heir, and the jurisdiction is not confined to the circuit where the custody of the lunatic belonged.

Upon the re-argument of this case, allowed in consequence of the recent change in the composition of the Court, and since the foregoing opinion was prepared, the objection has been for the first time made in behalf of the executors of Turner Smith, that as the proceedings in chancery under which the accounts and other matters now in litigation arose, took place in the Mercer Circuit Court, the Washington Circuit Court had no jurisdiction to entertain the bill or grant the relief which he asks. But all the parties to this suit resided in the county of Washington. The Circuit Court of that county, therefore, had jurisdiction of the persons of the defendants, and as a Court of equity it had general cognizance of trusts and accounts, and also of lunatics within its territorial jurisdiction, and was in all respects as competent to determine the matters in controversy as any other Court of Chancery. And although during the life of the lunatic and his committee, while both were under the peculiar superintendance of the Mercer Circuit Court, that Court may have had peculiar or exclusive jurisdiction of all matters between them, affecting the estate and rights of the lunatic, or the rights and duties of the committee as such; yet, as by the death of both, this peculiar superintendance has ceased, and as by the grant of administration the estate of the lunatic has passed absolutely to an administrator appointed by another jurisdiction, we do not perceive any sufficient reason why the administrator may not sue for the estate of his intestate in the hands of the personal representative of the committee in the county of Washington, or in any other in

which she may be found.   We understand that all credits and allowances claimed by the committee or for him, up to the time of his death, have in fact been granted, and nothing in that respect remains to be done by the Mercer Circuit Court.   Whatever of the estate of the lunatic which had come to the hands of the committee, was left after the deduction of these credits and allowances, belongs to the administrator of the lunatic, and is wrongfully withheld by the executors of the committee.   If it consisted of a visible chattel, might it not be demanded by suit wherever it was found, and if in the hands of the executors, must they have been brought before the Chancellor in Mercer?   The recovery of the three slaves in the action of detinue, is an answer to that question.   Why then must a resort be had to that Chancellor for a money demand?   The money belongs to the administrator as much as the slaves did, but being invisible, or resting in accounts, it is in fact undistinguishable from the estate of T. Smith in the hands of his executors.   Does the fact that it is thus involved in uncertainty, and mixed up with the committee's own estate, give his executors a peculiar privilege to be sued in the Mercer Circuit Court, when they are not within its territorial jurisdiction? There is no denial that the administrator is entitled to so much of George Smith's estate as is in their hands.   The only question is as to the amount.   If that were ascertained, it could not be denied that the administrator, to whom it belongs, might recover it wherever he could find the persons who are liable for it.   Why then, and how far is the Mercer Circuit Court peculiarly or exclusively competent to ascertain this amount?   We say the peculiar and exclusive power of that Court was exhausted by its acts, or has passed from it by the termination of the proceedings in chancery and the death of the parties.   It can no longer compel the committee to make more perfect disclosure of the estate, or control his management of it; and it is no more competent than any other Court of equity, either to ascertain by comparison of his reports and settlements, the proper balance of those accounts, or to ascertain by scrutinizing them or comparing them with extrinsic facts, whether any, and what

items of the lunatic's estate were omitted. The fact that it might in Turner Smith's life have held him to a stricter account, and made fuller investigation, but did not, can neither exempt his estate from its just liability, nor preclude another Court from ascertaining and enforcing it. All that is due to that Court is, that in investigating the extent of T. Smith's liability, due respect shall be paid to its acts, as the acts of a tribunal having at the time, the exclusive superintendence of the lunatic and the committee, in reference to the management of his

*The acts of a Court of competent jurisdiction, so far as they purport to be conclusive between the parties, are entitled to a conclusive effect.*

person and estate. Its acts within its legitimate powers, are so far as they are conclusive in their character, entitled to a conclusive effect, and have received it in the foregoing opinion. And to the allowances to the committee, which are virtual dispositions of the lunatic's estate, we have given the like effect. The settlements were expressly left subject to future investigation, and the annual reports of the committee are but impliedly approved. We have disturbed no item of debit or credit in either, but have only ascertained that certain items of charge were not included. We did what might perhaps have been in itself a sufficient answer to the objection, that as the Washington Circuit Court had jurisdiction of the person, and also of the general subject, the failure to make in that Court, and in due time, the objection of a special jurisdiction in another tribunal, if it could then have been made with effect, should be regarded as a waiver of it, and precluding it in this Court, and especially after it had been assigned for error by the objecting party, that the Washington Circuit Court should have *confirmed* all that had been done in the Mercer Circuit Court, or under its sanction. This opinion has in effect confirmed all that was actually done by the Mercer Circuit Court.

*Mandate.*

Wherefore, the decree, except as to the dissolution of the injunction against the judgment for hire, is reversed upon the cross errors of G. Smith's administrators, and the cause is remanded, with directions to have the account stated between the parties according to the principles of this opinion, commencing with the year 1830. And for a decree in favor of the complainant for the bal-

·ance which may appear to be due, subject ·to the credits ·above mentioned, and with the effect of vesting in T. ·Smith's executors the demand on B. I. Head's estate, and of vesting in the complainant the notes of the Randells. So much of the decree as ·dissolves the injunction against the judgment for hire in the action ·of detinue, is af-·firmed.

C. A. *Wickliffe* for Hardin and wife; B. *Hardin* and B. & A. *Monroe* for T. Smith's executors; *Harlan* & *Craddock* and *McHenry* for Geo. Smith's adm'rs.