Titus *v.* Ash.

TITUS *et ux. v.* ASH.

In assumpsit by husband and wife, the declaration alleged that the wife had an interest in her deceased father's estate, and that the defendant, in considera-tion that the husband and wife made an acquittance to him of all their interest in her father's estate, promised to pay them a sum of money on demand; the evidence was of an express promise to the husband and wife. *Held,* that the wife was properly joined in the action. *Held,* also, that it was no variance from the declaration, though it did not appear on trial that the wife had any interest in her father's estate.

Where the statute of limitations is pleaded to a declaration on a promise to pay a sum of money on demand, and the plaintiffs reply that their action accrued within six years, if the evidence, instead of an original promise to pay money on demand, shews a promise to pay in such commodities and at such times as might be convenient to the defendant, it is a variance, though the plaintiffs prove an absolute new promise to pay the money on demand.

Where the reputation of a witness for truth is impeached by evidence, and a wit-ness examined to sustain him testifies that from his general reputation for truth he would not believe him under oath, he may state further that, laying aside impressions which he received at a certain trial at which the impeached wit-ness testified, he would believe him under oath.

Where there has been a quarrel between a witness and the party against whom he testifies, that party may prove not only the fact that there was a quarrel, but the circumstances which shew that it was serious and violent.

In this State there is no rule of practice which requires that before declarations of a witness can be proved for the purpose of contradicting his testimony, the witness must himself be asked whether he made the declarations.

ASSUMPSIT. It was alleged in the declaration that on the

10th day of November, 1833, David Ash died seized of real and personal estate, in which his daughter Hannah, the wife of the plaintiff, had an interest, and that the defendant, in consideration that the plaintiffs would make to him an acquittance of all the right which the plaintiffs had in the estate, promised the plaintiffs to pay them on demand the sum of seventy-five dollars. It was then alleged that the plaintiffs made and delivered to the defendant an acquittance of all their right, which was accepted by the defendant.

Plea, the general issue and the statute of limitations. Replication, that the cause of action did accrue within six years.

At the trial, it appeared in evidence that in the autumn of the year 1830, David Ash desired to equalize the advances he had made to each of his children, and to make a settlement of his estate. He thereupon estimated the sums which each of them had received, and procured from the other children a release, under seal, to Reuben, and David (the defendant,) two of the number, of all the right which each had to his estate, and all the estate of which he might die seized, with a covenant that none of them would make any claim to the estate. He then conveyed his homestead in Lisbon to Reuben and David, taking from them a mortgage, conditioned to support himself and wife during their lives. There was evidence that at the time of his death he was possessed of certain real and personal property. There was evidence that such sums as it became necessary to advance to any of the children in order to make them equal, were secured by the joint notes of the father, Reuben, and David.

The defendant then moved that the plaintiffs should be non-suited, upon two grounds:

1. Because it appeared that Mrs. Titus had no interest in the estate of her father after the execution of the release; and such an interest, having been alleged in the declaration, must be proved.

2. Even if she had an interest, as her husband had then an interest in the estate, the action should have been brought by him alone, without joining his wife.

The motion was denied by the court.

The counsel for the defendant moved the court to instruct the jury that if they should find that the deed from the plaintiffs to David and Reuben Ash was obtained fairly, and at the request of David Ash the elder, the allegation in the writ that David Ash the elder left estate of value, in which the plaintiffs, by law, were entitled to a distributive share, would not be maintained, and their verdict should be for the defendant.

But the court declined so to instruct the jury.

The counsel for the defendant also moved the court to instruct the jury that the defendant would not be bound by an acknowledgment of a debt which he was liable and willing to pay, unless it were made to the plaintiffs or to their agent. But the court declined so to instruct the jury.

There was evidence that in the month of October, 1840, Samuel Ash, by virtue of a power of attorney from the plaintiffs, demanded of the defendant payment of the sum of seventy-five dollars. The evidence was contradictory as to what was said and done at the time of the alleged demand; but the evidence for the plaintiffs tended to prove that the defendant said he would not pay the money to Samuel Ash, but would pay it to the plaintiff and his wife, if they would come for it. The defendant moved the court to instruct the jury that this promise to pay would not take the case out of the operation of the statute of limitations, it not having been proved that the condition was complied with before the suit. The court stated to the jury the contradictory evidence upon this point, and instructed them that if the defendant promised to pay the money only on condition the plaintiffs would come for it, he thus made that a condition precedent to his paying it, and the plaintiffs could not maintain the suit, as the condition had not been performed.

The evidence in the case tended to prove that in the year 1833, when the original promise was alleged to have been made, the defendant said he would not pay in money, but in such articles as he could conveniently pay in. The counsel for the defendant moved the court to instruct the jury that even if they should find that there was a contract to pay upon a good consideration,

yet as it was a promise to pay not in money, but in such things and at such times as he could conveniently, their verdict should be for the defendant. The court instructed the jury that there must be proof of a new promise within six years before the date of the writ, and that unless they believed such a promise had been made, the action could not be maintained; but as the new promise, if made, was a promise, according to the evidence, to pay, not in specific articles but in money, the court declined to instruct the jury according to the motion.

It was alleged by the defendant that Samuel Ash, an important witness for the plaintiffs, was not entitled to credit, because he was hostile to the defendant, had attempted to get his property from him fraudulently, and was not a man of truth. Upon cross examination this witness testified that his father, David Ash, once signed notes as surety for him and one George Amy, payable to the Wells River Bank, to indemnify him for which they deposited with him other notes as collateral security. He could not say whether David Ash did or did not give them a receipt for the notes. They paid the notes to the bank, and received from David Ash the collateral securities. He could not say whether he returned them the receipt or not. He was uncertain at first, whether, after his father's death, he presented the receipt to the defendant as a claim against his father's estate, but finally said he never did. Upon the cross examination of another witness, Edward Ash, the counsel for the defendant put to him various questions, for the purpose of proving that Samuel Ash did present the receipt as a valid claim against his father's estate, both to shew the hostile feelings of the witness, Samuel Ash, and as tending to prove a conspiracy between him and George Amy, to procure fraudulently from the defendant, after the execution of the release, some of the property of David Ash, of which conspiracy, as the counsel alleged, the present suit was the result. But the court ruled that evidence from other sources of an attempt by Samuel Ash to defraud the defendant in a matter unconnected with the subject of this suit, and collateral thereto, was not admissible for the purpose of

impeaching his credit, and that, being collateral, the counsel could not contradict the answers of Samuel Ash relating thereto, upon his cross examination; and the evidence was excluded. To this ruling the counsel for the defendant excepted.

To impeach the reputation of Samuel Ash and George Amy for truth, thirty depositions and witnesses were introduced, and to support their characters the plaintiffs offered forty-eight depositions and witnesses. After the impeaching evidence had been offered, those witnesses were recalled, and stated that they testified at the hearing of a case, *Goodall* v. *Richardson*, before an auditor, and that their characters were not impeached. To this evidence the counsel for the defendant objected as incompetent.

It appeared that there had once been a hearing of this case before referees, and Greenlief Cummings was called by the plaintiffs to sustain the reputation of Samuel Ash and Amy for truth. Cummings had been examined by the defendant as a witness in chief upon the merits, and had then been cross examined by the plaintiffs, and after this cross examination was concluded the plaintiffs asked him what were the characters of Ash and Amy for truth. This witness was one of the referees, and testified that from their general reputation before the time of this trial, he should not believe them under oath; that he had heard their characters sustained and impeached before, but that, laying aside what he heard about their characters at the time of the reference, he should believe them under oath as soon as he would men in general. To this evidence the counsel for the defendant excepted.

The defendant alleged that Samuel Ash, and his son William, both witnesses for the plaintiffs, were hostile to the defendant, and proposed to prove that these witnesses had once *thrown stones* at him, and that a fracas took place between them. The court ruled that the defendant might show that there had been a quarrel between him and these witnesses, to prove that they testified under the influence of some prejudice, but that the particulars of that quarrel could not be inquired into, and shown by evidence *aliunde*, as a new and collateral issue would thus be

made. It appeared also that no questions had been asked these witnesses, relating to this affair, upon their examination, and the evidence was excluded, to which ruling the defendant excepted.

At the trial the main question upon the merits was, whether the sum of seventy-five dollars was a voluntary gift by the defendant, or whether it was agreed to be paid in consideration of a release by the plaintiffs of their interest in the. estate of David Ash. In the deposition of Mrs. Jefferson, a witness for the defendant, is the following paragraph : " David gave me the seventy-five dollars, part in money and part in silver spoons, and part out of the store. David told me when he got the spoons that he should have the initial letters of his name put upon them, [as they were a gift from him,] and they were so marked." The part inclosed in brackets was excluded by the court, to which the defendant excepted.

It appeared that in the year 1840 Samuel Ash was appointed administrator of the estate of David Ash, upon a petition signed by himself and the plaintiffs, George Amy and wife, and Edward Ash, which grant of administration was afterwards revoked.

The jury returned a verdict for the plaintiffs, which the defendant moved to set aside, for the rulings above stated.

*Fletcher*, for the plaintiffs.

*Goodall* and *Morrison*, for the defendant.

PERLEY, J. The declaration alleged that the wife of Titus had an interest in the estate of David Ash, and that the promise declared on was made in consideration that the plaintiffs would make to the defendant an *acquittance of all the right they had in the estate*, and that the plaintiffs made an acquittance accordingly of all their right, to the defendant. The defendant objects that there is a variance, because the case shews that neither of the plaintiffs had any interest in the estate of David Ash.

Taking it to be the fact, that neither of the plaintiffs had any

interest in the estate, the consideration alleged for the defendant's undertaking, is the release, and not the conveyance of any estate, and that consideration is sufficient. The statement that the plaintiffs had an interest, is the mere recital of a fact not material to the case, and no part of the consideration. The declaration is complete without it. It may be wholly rejected, and leave the agreement correctly and fully stated. There is no allegation that the plaintiffs undertook, as part of the consideration, to convey any estate or interest. The execution and delivery of the acquittance constituted the whole consideration.

The general rule is stated in *Bristow* v. *Wright*, Doug. 667. Where the declaration contains impertinent matter foreign to the case, that will be rejected by the court, and need not be proved; where an averment may be wholly omitted and leave the declaration perfect, and of the same legal effect, it need not be proved. *Peppin* v. *Solomon*, 5 Term Rep. 496; *Winn* v. *White*, 2 Bl. Rep. 840, is very much in point. The plaintiff in that case declared in assumpsit for neglect to keep premises in repair, and alleged that when he demised he was seized in fee. It appeared on trial that he was seized in tail, but that the defendant entered, and held under him, and *held* no variance, because the estate of the lessor was immaterial. So in the present case, by the agreement declared on it was immaterial what estate the plaintiffs had, or whether they had any.

The evidence, therefore, sufficiently maintains the declaration, even though it should be held that the case did not shew Hannah Titus, the plaintiff, to have had an interest in the estate of David Ash, her father. The court have not found it necessary to determine that question. It would, perhaps, be difficult to find in the case the legal ground on which she parted with her right to a share in her father's estate.

In his lifetime, when, of course, she had no legal interest, she joined in a deed acquitting and releasing to a third person her expectancy in her father's estate, and covenanted, together with her husband, that she would not claim anything in his estate.

As this deed was made with the knowledge and approbation of David Ash, Titus, the husband, might be estopped by his covenant to set up any claim after the death of David Ash. *Quarles* v. *Quarles*, 4 Mass. 680 ; *Kenney* v. *Tucker*, 8 Mass. 143. But the wife is not bound by her covenant in a deed of conveyance, either as a contract or by way of estoppel. *Wadleigh* v. *Glines*, 6 N. H. Rep. 17 ; *Jackson* v. *Vanderheyden*, 17 Johns. Rep. 67 ; *Carpenter* v. *Schemerhorn*, 2 Barb. Ch. Rep. 314 ; *Hardin* v. *Smith*, 7 B. Mon. 390 ; *Aldridge* v. *Burleson*, 3 Blackf. 201.

It is said in *Fowler* v. *Shearer*, 7 Mass. 14, and in *Colcord* v. *Swain*, 7 Mass. 291, that the wife is not bound by her covenants in the joint deed of herself and husband, " further than they may operate by way of estoppel ;" but it was not decided in either of those cases that they could operate by way of estoppel, and perhaps nothing more was intended by the remark, than that her covenant, if it were necessary to the conveyance, might operate by way of estoppel on the estate she then had, as was sometimes the case where a fine was levied of lands held by the husband in right of his wife. In such case, the warranty inserted in the concord was by the husband and wife, and bound her so far as to give the fictitious conveyance operation upon her estate. Cruise's Digest, Title 35, chapter 9, § 50, and chapter 10, § 11.

The deed of the husband and wife, made in the lifetime of her father, would not, either as a direct conveyance, or by way of estoppel, prevent the wife from claiming her share in her father's estate, upon the death of her husband.

There are also serious difficulties in the way of setting up the transaction stated in the case as an advancement. In the first place, it does not fall within any of the enumerated cases, which by the statute then in force were to be considered as advancements. Statute of 1822, Ed. of 1830, p. 332.

It would probably be held that no advancements could be allowed except such as were specifically provided for by that statute. Such is the construction which has been put upon a similar statute in Massachusetts. *Barton* v. *Rice*, 22 Pick, 508 ;

and our Revised Statutes are express, that no advancement shall be allowed unless it is proved in one of the ways therein prescribed.

Then again, had the court of common pleas any jurisdiction under our statute to decide the question whether there was an advancement, and to allow it against the child's share in her father's estate? The jurisdiction is given to the judge of probate to divide and distribute the estates of intestates. The statute of 1822 provides, that in the settlement of such estates advancements may be allowed by the court of probate, either in the partition of the real, or in the distribution of the personal estate. N. H. Laws, ed. of 1830, p. 353. The judge of probate is by the statute to make distribution of the estate; the estate is to be settled in his court. But the estate will not be distributed and settled, unless advancements are taken into the account. The statute may well be held to mean that the judge in the settlement of the estate shall and must allow for advancements, and that he may do this either in the partition of the real, or in the distribution of the personal estate. The provision of the Revised Statutes is unequivocal that the judge of probate shall settle and allow the advancements. Chap. 166, § 8.

Where a party, having legal capacity to bind himself, has acknowledged by deed an advancement of his full share, and covenanted that he would make no further claim, perhaps this prospective adjustment may supersede the necessity of an inquiry in the probate court, and the deed may operate as an estoppel in a suit at law. But here the wife had no power to bind herself in that way; and as to her, notwithstanding her deed, the court would be obliged to settle, first, whether there was an advancement in fact, and then, whether in amount and value it was equal to her whole share in the estate. No such inquiries were made in this case, and it may well be doubted whether the court of common pleas had any jurisdiction to entertain these questions. The court of probate have a clear jurisdiction, and it must be regarded as a wide departure from the general policy of our statutes on this subject, to allow another tribunal to interfere in

this or any other matter that belongs directly to the distribution and settlement of intestate estates.

We are aware of a case in Pennsylvania in which it has been held that a question of advancement may be, but must not of necessity be, settled in the orphans' court. *Earnest* v. *Earnest*, 5 Rawle 213.

If the question of advancement could only be determined in the probate court, on settlement of the estate, it would seem that the lands in the meantime would descend to all the children, and until partition they would all have an estate and interest, liable to be defeated in case any one should be found to have received his full share by advancement. The wife would then have an interest, at least in the land; for though the husband might be estopped to make any claim by his covenant, the wife upon his death, in her lifetime, might assert her right.

These suggestions are meant to guard against the inference that the court agree in the defendant's position that the wife had no interest in her father's estate. That point is left undetermined.

It is objected that this action cannot be maintained by the husband and wife, but that it should have been brought by the husband alone.

It is to be remarked that if the wife had an interest in the estate of her father, there is no variance affecting this question between the declaration and the evidence. The plaintiffs made out this part of their case as they stated it, and if on the case stated in the declaration the wife ought not to have been joined, the objection should have been made on demurrer, or on a motion in arrest of the judgment; but this exception was taken on trial, and there is no motion in arrest of judgment. We are however of opinion that the wife was properly joined, whether she had or had not an interest in her father's estate.

The husband—this promise to him and his wife having been made during coverture—might have sued alone. But where an express undertaking is made to the husband and wife, on a consideration moving partly from the husband and partly from

Titus *v.* Ash.

the wife, the wife may join with the husband in the suit. Com. Dig., Baron & Feme (X.); Com. Dig., Baron & Feme (V.) note; *Nurse* v. *Wills,* 4 B. & Ad. 739; *Wills* v. *Nurse, S. C.* in Error, 1 A. & E. 65; *Smith* v. *Ransom,* 21 Wend. 202. Where the consideration moves partly from the husband and partly from the wife, and the promise is not express but implied, the law would seem to be otherwise. *The Dippers of Tunbridge Wells,* 2 Wilson 424. In this case the release of the claim which the husband and wife had to her father's estate, was a sufficient consideration for the promise, though they had in fact no interest. *Perkins* v. *Bumford,* 3 N. H. Rep. 522. This consideration moved partly from the husband and partly from the wife; for the husband would be prevented by the deed, from setting up any claim during his life, and the wife, after his death, if she survived him. This is the state of the case, independent of the fact that whatever color of title the plaintiffs appear to have had, was in right of the wife as heir and next of kin to her father.

The court properly left it for the jury to find, on the contradictory evidence, whether the new promise was absolute or conditional; and if they found it to be conditional, the instruction that the plaintiff could not recover unless the condition were performed, was also correct.

A promise and acknowledgment to a third person are clearly sufficient to take the case out of the statute and avoid the plea. There was evidence that the original promise of the defendant was to pay seventy-five dollars, not in money on demand, according to the allegation of the declaration, but in such things and at such times as might be convenient to him. The court declined to instruct the jury that if the original promise was to pay, not in money, but as above stated, the plaintiff could not recover, but instructed them that if the new promise was to pay immediately and in money, the declaration was maintained.

The declaration is, and according to the settled practice, ought to be, on the original and not on the new promise. *Leaper* v. *Tatton,* 16 East 420; *Thornton* v. *Illingworth,* 2 B. & C. 824;

*Upton* v. *Else,* 12 Moore 303; *Little* v. *Blunt,* 9 Pick. 488. Perhaps a declaration might be framed on the new promise; but in that case the original liability must be alleged as the consideration for the new undertaking. *Danforth* v. *Culver,* 11 Johns. 166. When a new promise is replied to avoid a plea of the statute, it is not necessary that the new promise should agree with that laid in the declaration, and with the original undertaking. If the original promise was absolute, and declared on as such, and the new promise is conditional, provided the condition is shewn to have been performed, the issue on the part of the plaintiff is maintained. So it is not necessary that the new promise should be made to the plaintiff in a way to make a new contract with him, such as is required to rebut a plea of infancy or bankruptcy. The substance of the replication would seem to be that the defendant has waived the statutory bar which he pleads to the action. *Buswell* v. *Roby,* 3 N. H. Rep. 467; *Betton* v. *Cutts,* 11 N. H. Rep. 177; *Yea* v. *Fouraker,* 2 Burrows 1099; *Thornton* v. *Illingworth,* 2 B. & C. 824; Angell on Limitations, 253, 254. In this case, if the defendant had pleaded the general issue, the evidence would have been a manifest variance from the declaration; and it is quite impossible to hold that the question whether evidence supports the declaration can depend on the answer which the defendant makes to it. The new promise, if it is to be regarded in the light of an undertaking or contract, is made in consideration of the original promise stated in the declaration, and that original promise must be correctly stated, even if it could be looked upon merely as the consideration of the promise on which the plaintiff relies.

The evidence of the original promise stated in the case must be held to be a variance from the declaration.

Evidence of the nature of the claim which the witness made against the estate of David Ash, was properly rejected. It might be shewn that the witness had a dispute with the defendant, but the particulars of his claim against the estate which the defendant represented, were not competent evidence. *Harris* v. *Tippet,* 2 Camp. 638. Evidence that the character

of a witness was not impeached on another trial, was incompetent, but it does not appear how it could have been material; and in such cases the court, at least in civil causes, do not set aside verdicts unless some reason appears for supposing that the evidence was prejudicial to the party against whom it was given. *Jewett* v. *Davis*, 6 N. H. Rep. 80; *Hamblett* v. *Hamblett*, 6 N. H. Rep. 333.

There is no valid objection to the testimony of Cummings. The defendant had introduced evidence to impeach the general reputation of the witness for truth. It might be important for the defendant to shew that his bad reputation was owing principally to attacks made on his character upon occasion of his testifying at a particular trial. Such evidence might have a tendency to satisfy the jury that the reports unfavorable to the character of the witness had their origin more or less in the feelings and prejudices caused by that trial; and, if so, less weight might be given to the impeaching testimony. In this view of the evidence, Cummings having testified that, from his general reputation, he would not believe the witness under oath, might be asked what his testimony would be, laying aside the impressions which he received at the trial mentioned. *The State* v. *Howard*, 9 N. H. Rep. 485.

A quarrel between a witness and the party against whom he testifies, may be proved to discredit the witness. But the quarrel in such case is not the substantial fact; it is no more than a circumstance tending to shew prejudice and ill will in the witness, such as would detract from the weight of his testimony. The merits and the nature of the dispute between the witness and the party are not material. The court will not inquire which side was in the wrong. But the degree of violence in the quarrel is manifestly material to the point in question. Was it a slight and accidental difference on some trifling subject, such as would be likely to leave behind no trace of ill will or prejudice? or a serious and inveterate feud, such as would perpetuate a grudge in the mind of the witness against the party? If the witness admits a misunderstanding, but denies the circum-

stances which shew that it was serious, he denies the substantial fact attempted to be proved. If he wholly denies the quarrel, he may be contradicted; and if he denies all that makes the quarrel material, we think he may be contradicted on the same principle. *Harris* v. *Tippet*, 2 Camp. 638 ; *Atwood* v. *Walton*, 7 Conn. 66 ; *Pierce* v. *Gilson*, 9 Vermont 216 ; *Rixey* v. *Bayse*, 4 Leigh's Rep. 333.

When it is proposed to prove a fact which shews the witness to stand in a relation to the parties that ought to detract from his credit, it would seem that in England the witness must first be inquired of as to the fact, as in the case where declarations of the witness are offered to be proved to contradict his testi-mony. *The Queen's Case*, 2 Bro. & Bing. 284. But in Vermont, where the practice requires the inquiry to be made of the witness, if he is to be contradicted by proof of his declarations, it is not necessary that the witness should be first questioned on the subject, when evidence is to be given of a dispute which he has had with one of the parties. *Downer* v. *Dana*, 19 Vermont 338.

In this State, where it is proposed to give declarations of the witness in evidence to contradict him, there is no rule of practice which requires that he should be first asked whether he made such declarations. If he has explanations to make, he can be called again. The question is frequently put to the witness as matter of policy, in order that he may be committed by a statement in advance; and has perhaps sometimes been supposed to be necessary. We are satisfied, however, that there is not any peremptory rule that requires it. Our practice on this point agrees with that which is understood to prevail in Massachusetts and in Maine. *Tucker* v. *Welch*, 17 Mass. 160 ; *Ware* v. *Ware*, 8 Greenl. Rep. 42.